DOWLING vs. LAWRENCE.

*September 8 — September 25, 1883.*

*Sale of Chattels — Fraud — Evidence.*

1. Knowledge and concealment by the vendor of the fact that a horse is blind may amount to a positive fraud which will avoid a sale, even though there was no express warranty; and where the

vendor has denied that he knew of the blindness, evidence of what was said to him on that subject by a third person before the sale is admissible as tending to show such knowledge.

2. In such a case, the error of rejecting the testimony of one who heard the conversation between such third person and the vendor is not cured by the fact that such third person subsequently testifies that he does not think he told the vendor that the horse was blind.

APPEAL from the Circuit Court for *Crawford* County.

Replevin for a number of cattle. The facts are sufficiently stated in the opinion.

For the appellant there was a brief by *Thomas & Fuller*, and oral argument by *Mr. Thomas*.

- For the respondent there was a brief by *Brooks & Dutcher*, and oral argument by *Mr. Brooks*.

COLE, C. J. One defense stated in the answer was that the cattle in controversy were obtained of the defendant on the exchange of a horse for them; that at the time of such exchange the plaintiff warranted the horse to be sound, whereas, in fact, the horse was blind, to the knowledge of the plaintiff when the trade was made; that immediately upon discovering the fraud practiced upon him by the plaintiff, and on the day of the exchange, the defendant returned the horse to the plaintiff and took possession of the cattle.

On the trial the plaintiff was sworn, and denied that he made any general warranty as to the soundness of the horse; denied that the horse was blind while he owned him, or that he knew that he was blind. The defendant in his testimony directly contradicted the plaintiff on these material points. Also to sustain this defense he called on his part, among other witnesses, A. D. Alderman, who in effect testified that he, with one Gibbs, went to see the horse while the plaintiff owned him, and that they talked some with the plaintiff about trading for the animal. In the conversation the plaintiff said he did not care about trading then; that the horse had hurt one of his eyes, and that he would not talk

about a trade until the horse's " eye had got all right." The witness said that he and Gibbs went into the barn, looked at the horse, and discovered that his eyes were not right. The witness was then asked what Gibbs said to the plaintiff about the horse being blind. The question was objected to by the plaintiff, and the objection was sustained.

The learned circuit court observed that what somebody else had said in the presence of the plaintiff about the horse being blind was not competent evidence unless the plaintiff was trying to sell the horse at the time to the defendant. It seems very clear that the learned circuit judge erred in this ruling, and must have entirely misapprehended the effect of the proposed testimony. Of course it tended to discredit the plaintiff's statements that he did not know that the horse was blind before he traded with the defendant. His knowledge as to the condition of the horse's eyes was a material fact. It is true, the plaintiff had testified that he did not warrant the horse's eyes, or did not warrant him at all, except as to the bunch on his breast. So also he testified positively that the horse was not blind while he owned him. Now, if Gibbs actually told the plaintiff when he examined the horse that he was blind, or he thought he was blind, would not this testimony tend to prove that the plaintiff had knowledge of the fact — if, indeed, it was a fact — when he made the trade? It is also evident that the proposed testimony had a bearing on the question of fraud. The contention of the defendant was that the plaintiff had been guilty of such a fraudulent concealment of a material fact, of which he himself was ignorant, as to entitle him to rescind the contract. If the horse was blind when the trade was made, and the plaintiff knew and concealed the fact from the defendant, it might, in some circumstances, amount to a positive fraud, even though there was no express warranty of soundness. That would depend somewhat on the question whether the defect was obvious, one likely to be

discovered by observation, and what the plaintiff said or did to conceal the defect. If the eyes of the horse appeared to be sound, the defendant would not think of applying tests to determine whether or not the horse could see. If the defect was one open to observation, no artifice or means being used to conceal or prevent the defendant from seeing it, and there was no warranty of soundness, the defendant might be bound by the trade. But it is quite apparent from the evidence that the defendant would not have made the trade had he known the horse was blind.

The plaintiff admits that the defendant was willing to pay a good price for a "*solid*" horse to put with a good one which he then had to do heavy work. The defendant doubtless supposed he was getting a gentle, sound, serviceable horse. But whether the plaintiff had purposely concealed so material a defect as that the horse was blind,— if such was the fact,— was an important inquiry on the pleadings. The object of the proposed testimony was to show knowledge on the part of the plaintiff that the horse was blind when the trade was made, and that he fraudulently concealed that fact from the defendant. "Whenever one person misrepresents or conceals a material fact — that is, a fact which is substantially the consideration for the contract, and which is peculiarly within his own knowledge,— such transaction will be void on the ground of fraud." Chitty on Con., 753.

It appears that Gibbs was sworn as a witness in the cause. He testified on this point, in substance, that when he examined the horse with Alderman he thought his eyes were not exactly right, but he did not remember that he said so to the plaintiff. Now, it is said by the learned counsel for the plaintiff that even if the court improperly excluded the question asked Alderman, the error was subsequently cured by what Gibbs said as to his recollections. But this is not a sufficient answer to the objection for excluding the ques-

tion, because Gibbs does not seem to remember whether he made the remark to the plaintiff that the horse was blind or not. He says: "I thought the horse's eyes were not exactly right. Don't think I said so there." He might not have remembered telling the plaintiff the horse was blind and still have made that remark, as it was proposed to show he did.

Some exceptions were taken to the charge of the court, both in respect to what was said about contracts being void or valid which were made on Sunday, and also in regard to what would amount to a warranty of the soundness of the horse. These exceptions we do not deem it necessary to notice, because, whether well taken or not, there must be a new trial on account of the error in excluding the question above noticed.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial awarded.