## KELLY vs. BERRY and others.

SALE OF LOGS. *(1) Waiver by vendee of objection to delivery on account of liens on the property. (2) Contract of sale construed; appraisal of logs by third person; no inspection required.*

REVERSAL OF JUDGMENT. *(3) No reversal for casual remark of judge, not injurious to appellant.*

1. Where, at the time of the vendor's offering to deliver property to the vendee according to contract, there are adverse liens upon the property, but the vendor furnishes security against them to the vendee's satisfaction, and the latter refuses to accept the property on the sole ground that it is of defective quality, this is a *waiver* of the objection founded on the existence of the liens.

2. A contract for the sale of logs fixed $10.50 per M. as the price of such of them as should average 250 feet each, and provided that a limited quantity of smaller logs might be delivered on the contract, the same to be appraised by a certain person, "the value to be based on the value of the $10.50 logs." *Held*, that this did not require an *inspection* of the smaller logs by the person named, to determine their value with reference to their *quality;* but he was to determine the value of the *merchantable* logs of the smaller sizes, on the basis that merchantable logs averaging 250 feet were worth $10.50 (the contract implying that *all* the logs were to be merchantable); and he might ascertain such sizes *from the scale bills.*

3. A judgment will not be reversed for a casual remark of the judge to the jury, which, even if inaccurate, had little importance in the case, and could not have misled the jury.

APPEAL from the Circuit Court for *St. Croix* County.

The complaint alleges that on the 6th of November, 1872, plaintiff entered into a contract with the defendants to cut and deliver, rafted in strings, all the saw logs he should cut

during the ensuing winter, at prices fixed by said contract, and to have said logs rafted by the first day of June, ensuing; that he duly performed all the agreements to be by him performed, by the terms of said contract, and had rafted, and ready for delivery on said day, all said logs so cut; that the defendants, being duly notified that such logs were so ready, refused to receive them or pay for them according to said contract, whereby the plaintiff sustained damage to the amount of $733.41.

The answer denied that the plaintiff had performed his agreement, and alleged that he had been paid all that he was entitled to receive under such contract; and further alleged that an agreement was entered into subsequent to that mentioned in the complaint, whereby it was agreed by the plaintiff, defendants and certain other parties, on account of certain liens having been filed on said logs, and certain of said logs being of inferior quality, and not in accordance with the terms of said contract, that, in order to give the defendants a good title to the logs, the plaintiff was to transfer and sell them to Coon & Barlow and L. North, and that the amount agreed by said subsequent agreement to be paid therefor should be paid to said Coon & Barlow and L. North; and that the amount so agreed to be paid was paid to said Coon & Barlow and L. North, with the assent of the plaintiff.

Upon the trial plaintiff claimed, and introduced testimony tending to prove, that the defendants, being notified of his readiness to deliver all said logs according to the contract, declined to receive them upon the ground that there were liens upon them; that thereupon he procured and delivered to the defendants an undertaking signed by Coon & Barlow, A. H. Baldwin & Co., the National Savings Bank and L. North, to receive said logs from plaintiff and deliver them to defendants upon the payment of the money to the National Savings Bank; that, upon the receipt of said undertaking by the defendants, they waived all objection to the title of the logs, but refused

Kelly vs. Berry and others.

to receive them upon the ground that they were not such logs as the contract called for.

The contract provided that the price of such logs as should "average four to the M. feet" should be $10.50 per M. feet, and that a limited quantity of smaller logs might be delivered under the contract, "to be appraised by the surveyor general of Stillwater district, the value to be based on the value of the $10.50 logs."

The testimony, although conflicting, tends to show that the logs in question were merchantable. The rulings of the court on the trial are sufficiently stated in the opinion.

The plaintiff recovered; and the defendants appealed.

*E. E. Bryant*, for appellant:

1. The defendants were perfectly justified in refusing to take the logs, so long as the liens existed. It is of the essence of the contract in such cases, that the vendor have a perfect and unincumbered title to the goods sold. *Dresser v. Ainsworth*, 9 Barb., 619; 2 Broom & Had. Com., 146, note 515; 11 Johns., 528. On failure of title, the vendee may rescind the sale, and recover the purchase money paid. 1 Bouvier's Inst., secs. 950, 953. 2. It was error to charge the jury that defendants "could have safely taken a delivery of the logs." This was not a question to be passed upon by the court; the only question being whether they were *legally bound* to take a delivery under such circumstances. And the lien law referred to by the court has nothing to do with this question. 3. It was error to admit the testimony of the surveyor general as to fixing the value of the small logs under the contract. An inspection of the logs by him was necessary, unless waived by the parties.

*H. A. Wilson*, for respondent, argued, *inter alia*, that when property is incumbered by a lien, and the vendee expressly waives that objection, and absolutely refuses to receive the property upon another ground, thereby inducing the vendor to omit making the title clear, the vendee cannot be heard to object to the title.

LYON, J. On the question whether the logs were transferred by the plaintiff to the defendants through Coon & Barlow's satisfaction of the contract, as alleged in the answer, there is a conflict of testimony. The question was fairly submitted to the jury, and they answered it adversely to the defendants. We cannot say that it was wrongly determined.

The learned circuit judge instructed the jury that if, when the undertaking of Coon, Barlow, North, Baldwin and the bank, was delivered to the defendants, they made no further objection to receiving the logs on account of the liens thereon," but were satisfied on that point and willing to receive them under such circumstances, but then refused to receive them because they were not such logs as the contract called for," then, if the logs were in fact such as the contract called for, the plaintiff could recover, otherwise not. We think this instruction correctly states the law of waiver as applicable to the case. Manifestly, if the plaintiff, when he offered to deliver the logs, secured the defendants to their satisfaction against liens, and removed their objections to accepting the logs because of such liens, and the defendants refused to accept them on the sole ground that the logs were defective in quality, they ought not to be permitted to excuse or justify such refusal by asserting the existence of the liens.

In the course of his charge to the jury, the judge said: " I think the defendants could have safely taken a delivery of the logs, the mark being recorded in their name, but would not be compelled to pay any portion remaining unpaid on the contract until the liens against logs had been discharged, and by taking a delivery of them from *Kelly* they could be made liable to the parties having liens to the amount of the value of the logs only." This is claimed to be error. But whether it implies an unsound legal proposition, or not, it seems to be a mere casual remark, and of little importance in the case. The judge did not say that the defendants were legally bound to accept the logs notwithstanding the liens, but only that he

Kelly vs. Berry and others.

thought they might have accepted them with safety; and we think the fair construction of the charge is, that the defendants were not bound to accept the logs subject to the liens, unless they waived the right to make that objection. We do not perceive how the jury could have understood the charge differently. Hence, the remark above quoted cannot, in any view of the case, work a reversal of the judgment.

It appeared that a small portion of the logs in question scaled less than four to the M. feet; that is to say, they averaged less than 250 feet each. The evidence tends to show that the price of these logs was fixed by the surveyor general specified in the contract at $8 per M. feet; and that he appraised them from the scale bills, without an actual inspection of the logs. He testified that he was able to determine the sizes of the logs from the scale bills in his office, and to fix the comparative value of the small logs, if not required to consider the quality thereof. The scale bills were verified by other testimony. The judge refused to give an instruction prayed on behalf of the defendants, to the effect that, unless waived by the defendants, the contract required that the surveyor general should make an actual inspection of the logs before appraising them.

The contract implies that all of the logs to be delivered under it were to be of merchantable quality, and the parties evidently contemplated that the comparative value of the small logs should be determined on that hypothesis. If so, no inspection was necessary. It seems to us that the simple problem submitted to the surveyor general, by the contract, was this: On the basis of $10.50 per M. feet for merchantable logs which will average 250 feet each, what is the value of those merchantable logs which the scale bills show average less than 250 feet each? The scale bills showed the size of the logs to be appraised, and the contract furnished a complete basis for making the appraisal, without an actual inspection. For these reasons, and because the contract contains no ex-

press provision requiring the surveyor general to inspect the logs, we conclude that the judge properly refused the proposed instruction.

We discover nothing further in the charge, or in the refusal of the judge to give instructions asked on behalf of the defendants, which requires special notice.

On the trial many exceptions were taken on behalf of the defendants to the rulings of the court on objections to the admission of testimony. Many of these are disposed of by the views above expressed, and many others are quite unimportant. It is unnecessary to discuss or even state these rulings. It is sufficient to say that we fail to find in any of them cause for reversing the judgment.

*By the Court.*—Judgment affirmed.